UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DEREK SHORT, | ) |
|          PLAINTIFF | ) ) ) |
| v. | ) )   CIVIL NO. 2:16-CV-74-DBH |
| SPRINGFIELD TERMINAL RAILWAY COMPANY, | ) ) ) ) |
|          DEFENDANT | ) ) |

**DECISION AND ORDER ON DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

There is one central issue in this partial summary judgment motion on Count I. Can employer initiation of disciplinary proceedings under a collective bargaining agreement—where the ultimate outcome is no discipline—ever amount to "adverse action" under the Federal Railroad Safety Act's prohibition of discrimination against whistle-blowers? I conclude that the question here is for the jury and **DENY IN PART** the Railway's motion for partial summary judgment on Count I.

For purposes of the motion, the following facts are undisputed. The plaintiff Short, a trackman, injured his knee at work, but did not report it that day, contrary to an Employee Safety Rule that requires immediate notification.[1] Def.'s Statement of Material Fact (SMF) (ECF No. 33) ¶¶ 11-14; Pl.'s Opposing

---

[1] The reason for his failure—he says he did not realize he had injured it until the next day—is not material at this stage.

Statement of Material Fact (OSMF) (ECF No. 37) ¶¶ 11-14, 49-53; Def.'s Reply to Pl.'s OSMF (ECF No. 42) ¶ 3.  He reported it around 6 A.M. the next day when he went to his doctor rather than to work.  The day after that, Springfield Railway Terminal Corporation, his employer, served on him a Notice of Hearing that said it was being issued:

> to develop the facts and place your responsibility, if any, in connection with the incident(s) outlined below: On Wednesday, October 29, 2014, at approximately 0605 hours, you informed your supervisor, Jason Beaudry, that you were involved in an accident that occurred on the property on Tuesday, October 28, 2014, between 1500 hours and 1530 hours, while you were performing your duties as a Trackman in crew # 2723, while dumping rocks on the mainline at or around MP 140.

Def.'s SMF ¶ 15; Pl.'s OSMF ¶ 15.  In Count I of his Complaint, (ECF No. 1) ¶ 25, Short alleges that reporting his injury was protected activity under the Federal Railroad Safety Act, 49 U.S.C. § 20109.  The Railway has not challenged that assertion in its summary judgment motion.  Short also alleges that the Railway

> took adverse or unfavorable actions against the plaintiff in whole or in part due to plaintiff's protected activities when it charged plaintiff with company rule violations in connection [sic], denied him work opportunities and denied him promotion opportunities as a result of the protected activity.

Compl. (ECF No. 1) ¶ 27.  The railroad agrees that if "the hearing process reveals that a rule violation occurred, appropriate discipline is assessed." Def.'s Mot. for Partial Summ. J. (ECF No. 32) at 7.  But here, the ultimate outcome was a decision that Short had not broken the rule, and his employment record was cleared.

In responding to the motion for summary judgment, Short has not addressed the Railway's assertions that no work or promotion opportunities were

2

forfeited and that late payment for his hours attending the hearing was inadvertent, and I treat those claims of alleged retaliation as waived. The only issue, therefore, is whether initiation of the unsuccessful discipline charge can support the claim. Since the Railway has moved for summary judgment on that issue alone, I assume for purposes of the motion that Short can demonstrate that the Railway initiated the disciplinary proceedings *because* Short engaged in protected activity.

> The FRSA provides that a railroad carrier
>
>> may not . . . discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done . . . (4) to notify . . . the railroad carrier . . . of a work-related personal injury. . . .

49 U.S.C. § 20109(a). The Supreme Court interpreted similar language in Burlington Northern & Santa Fe Railway Co., 548 U.S. 53 (2006). There the Court interpreted anti-retaliation language in Title VII of the Civil Rights of 1964 that makes it "an unlawful employment practice for an employer to discriminate against any of his employees" because he has engaged in protected activity. Id. at 62. The Court held that the language "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee . . . [T]he employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 57. I apply the principles of Burlington Northern given the parallel ("discriminate against") language in the FRSA.[2]

---

[2] I recognize that several lower court Title VII decisions grant summary judgment in an employer's favor on the basis that "investigating" an employee does not amount to adverse action.

3

The question, then, is whether a jury may find that the proceedings here, although they ultimately resulted in no discipline, could dissuade a reasonable railway employee from engaging in protected activity.[3]  After being served, Short attended "a pre-discipline investigation hearing" on November 20.  Def.'s Mot. (ECF No. 32) at 7; Def.'s SMF (ECF No. 33) ¶ 17; Pl.'s OSMF (ECF No. 37) ¶ 17.  Two weeks later the Railway's then-Vice President of Engineering notified Short that he had violated a Company rule and would receive "two days off without pay as discipline."  Def.'s SMF (ECF No. 33) ¶ 18; Pl.'s OSMF (ECF No. 37) ¶ 18.  Short appealed the finding and discipline.  Railway management and the Union General Chairman discussed the appeal.  The upshot was that the rule violation finding was vacated, all discipline was withdrawn, and Short's employee record was completely expunged of any reference to the issue.  According to the Railway's superintendent of engineering, employees are "definitely" justified in being nervous when they have to attend such a hearing and there is always the

---

See, e.g., Kuhn v. Washtenaw Cty., 709 F.3d 612, 625-26 (6th Cir. 2013).  Nonetheless, "context matters," Siegner v. Township of Salem, 654 F. App'x 223, 232 (6th Cir. 2016) (quoting Burlington Northern), and for the reasons stated in text I am satisfied that the actions the Railway took in this case present a jury issue.

[3] The Railway argues from the FRSA's statutory language that the mere initiation of disciplinary proceedings cannot, as a matter of law, constitute discrimination under subsection (a) of 49 U.S.C. § 20109.  A separate provision of the same statute, subsection (c)(2), defines prohibited "discipline" against employees seeking or complying with medical treatment to include "bring[ing] charges against a person in a disciplinary proceeding . . . ."  49 U.S.C. § 20109(c)(2).  Since that definition of "discipline" applies only "[f]or the purposes of this paragraph," the argument goes, Congress cannot have meant subsection (a) also to prohibit retaliatory investigative proceedings.  I disagree.  Congress added subsection (c) to the Act a decade ago in order to strengthen promotion of railroad safety.  See, e.g., Jones v. Illinois Cent. R.R. Co., CA No. 15-635, 2015 WL 5883030, at *6 (E.D. La. Oct. 8, 2015) (interpreting subsection (c)(1) but recounting legislative history pertinent to all of subsection (c)); Santiago v. Metro-North Commuter R.R. Co., ARB Case No. 10-147, ALJ Case No. 2009-FRS-011, 2012 WL 3164360, at *8-9 (ARB July 25, 2012).  Although subsection (a) and subsection (c)(2) are both anti-retaliatory in nature, the latter was added to supplement the Act's already-existing anti-retaliatory measures in the name of greater safety, and there is no reason to think it should instead be interpreted to constrain the meaning of "discriminate" in the former.

4

potential of being fired.  Pl.'s OSMF (ECF No. 37) ¶ 68; Def.'s Reply (ECF No. 42) ¶ 3.  And, said the Railway's former Vice President of Engineering, "[u]ntil an employee received the letter stating the outcome of the hearing, he was justified in being concerned."  Pl.'s OSMF (ECF No. 37) ¶ 97; Def.'s Reply (ECF No. 42) ¶ 3.

The Railway characterizes all this activity as "simply conducting an investigation" that "cannot be an adverse action," Def.'s Mot. (ECF No. 32) at 13.  But I conclude that a jury might reasonably find that this treatment and process, although they ultimately came to naught, "could well dissuade a reasonable worker from" engaging in the protected activity of reporting an injury.  Burlington Northern, 548 U.S. at 57.  True, courts in Title VII cases have sometimes concluded that investigations resulting in no discipline were *under the circumstances* too trivial for any reasonable jury to find material adversity in Burlington Northern's sense.  See, e.g., Tepperwein v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 569-70 (2d Cir. 2011).  Ultimately, though, under Title VII and the FRSA alike, material adversity is a question of fact for the jury so long as a reasonable jury could answer it either way; Burlington Northern itself contemplates a jury decision.  548 U.S. at 69-70 (explaining what "a reviewing court or jury" would need to focus on under the material adversity standard).

I respectfully disagree with the district court's decision in Brisbois v. Soo Line Railroad Co., 124 F. Supp. 3d 891 (D. Minn. 2015), that even after Burlington Northern, it can never be an adverse action when "a rail carrier

5

attempts to determine whether [an employee] has violated a rule—typically by following an investigatory process mandated under a CBA . . . ." Brisbois, 124 F. Supp. 3d at 903.  Each case is different, and each disciplinary treatment is different.  Brisbois distinguishes being *accused* of violating a rule and being *disciplined* for violating the rule.  But I conclude that if, as is the case here, a reasonable jury may find the Railway's motivation bad,[4] and may find that a reasonable employee would be deterred from engaging in protected activity by the treatment that goes along with the accusation, then summary judgment is inappropriate for the question of material adversity.[5]  The Department of Labor's Administrative Review Board has reached the same result.  Vernace v. Port Auth. Trans-Hudson Corp., ARB Case No. 12-003, ALJ Case No. 2010-FRS-018, 2012 WL 6849446, at *1 (ARB Dec. 21, 2012).[6]  (I do not rely on Vernace, either

---

[4] The Railway says that the investigation and hearing process were required by its collective bargaining agreement, and Brisbois v. Soo Line Railroad Co., 124 F. Supp. 3d 891, 903 (D. Minn. 2015) suggests that simply adhering to such an agreement cannot amount to an adverse action.  But the collective bargaining agreement only requires the investigation and hearing process be adhered to *in order* to discipline an employee.  Def.'s SMF (ECF No. 33) ¶ 4-6 & Ex. B-1; Pl.'s OSMF (ECF No. 37) ¶ 4-6.  A jury could still find a retaliatory motivation behind the decision to initiate the disciplinary process in the first place.  An investigation and hearing are necessary for legitimately imposed discipline, but not by themselves sufficient to defeat an allegation of adverse action.

[5] Unlike the defendant, I do not find pertinent Judge Posner's "by the way" paragraph in Koziara v. BNSF Railway Co., 840 F.3d 873, 878 (7th Cir. 2016):
> by the way there is nothing sinister, as the term "initiating event" may seem to suggest, in deeming the submission of an injury report a proper occasion for an employer's conducting an investigation.  An injury report is a normal trigger for an investigation designed to uncover facts that can prompt corrective action that will reduce the likelihood of a future injury.

In Koziara the determination was that the injury report was not the proximate cause of the employee's termination for theft.  The case did not address the issue of what is adverse action.  Heim v. BNSF Railway Co., 849 F.3d 723 (8th Cir. 2017), cited by the defendant, also was a causation case, not an adverse action case.

[6] In interpreting the parallel Wendell H. Ford Aviation Investment and Reform Act, the Administrative Review Board concluded that the statute was more protective than Title VII's ban on retaliation as interpreted in Burlington Northern.  Williams v. American Airlines, Inc., ARB Case No. 09-018, ALJ Case No. 2007-AIR-004, 2010 WL 5535815, at *8 (ARB Dec. 29, 2010).  While trivial actions with de minimis harm should be excluded, the ARB said that any act of

pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), or the First Circuit's willingness to sometimes find the ARB's "interpretation[] persuasive." Worcester v. Springfield Terminal Ry. Co., 827 F.3d 179, 183 (1st Cir. 2016).)

Accordingly the defendant's motion for summary judgment is **DENIED** except as to the claims of denied work / promotion opportunities and delayed payment for time spent at the hearing, as to which it is **GRANTED**.

**SO ORDERED.**

**DATED THIS 26TH DAY OF JULY, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

"deliberate retaliation" should be covered "without any expressed limitation to those actions that might dissuade the reasonable employee." Id.

7